The District Court in this case denied class certification in this TCPA case based on the erroneous premise that persons who receive faxes using an online fax service instead of a stand-alone fax machine do not suffer an Article III concrete injury without some additional showing that the fax caused some other harm. It reached that conclusion by characterizing a TCPA violation as purely procedural, like one of the violations at issue in the Spokio case before the Supreme Court, where the allegation was that the defendant failed to follow reasonable procedures designed to prevent inaccurate information in a credit report. That's not what a TCPA violation is like. Like a text, or a phone call, or in this case a fax, it's not a procedural violation, where the harm that is intended to be remedied doesn't occur unless some other contingent thing happens. There's no gap there. The violation, the harm, is the receipt of the unwanted text, or the unwanted call, or the unwanted fax. So there's no gap between those two things. Well, I thought that the court was making a distinction between the kind of fax, stand-alone versus online. Correct. Right, the district court, I think, and I think the defendant would agree with us, that an individual person using an online fax service would have a concrete injury. It would be able to sue because it could make an analogy to the common law intrusion upon seclusion, like the plaintiff in Drazen, the en banc opinion from this court, regarding a text message to a cell phone. A single text to a cell phone is a concrete injury, and that plaintiff can sue. So it's an unusual situation because I think everyone agrees that an individual using an online fax service could sue under Drazen, and everybody agrees that an individual or a business using a stand-alone fax machine can sue because that's Saris, Palm Beach Golf versus Saris from this court as well. Even if nobody ever saw it, even if they didn't have a copy of it, the fact that there was a transmission to a stand-alone fax machine is good enough. So it's just this one circumstance where a business is using an online fax service that the district court would say, no, you don't have a concrete injury, or you have to go sue in state court. Even though Congress authorized this, gave you this statutory cause of action, you can't sue in federal court. So that can't be right, right? There's something wrong there. And... I agree it's a statutory cause of action, but of course we have to analogize it to harm in common law, and that's where you run into your problem, right, dealing with, I mean, I think there are several definitional problems that the magistrate judge pointed out with regard to your class definitions, but one is that you also include entities, right? And you run into a problem there. So how do you get around the problem that a common law entity would not have been able to pursue, allege a harm of inclusion, intrusion upon seclusion? Right, intrusion upon seclusion. And just so we're clear, the Communications Act of 1934, that's where the TCPA is codified, it defines person to include an individual, partnership, association, joint stock company, trust, or corporation. So all those things are persons in the way Congress set up the statute. But yeah, the class definition also says persons and entities, maybe that's redundant. But the core point is that Congress is the body that is supposed to make a determination about who's entitled to sue for what. There, Congress extended a new right to corporations that maybe wasn't there before, didn't exist in the common law, but Congress has the power to do that. It can create, it can elevate harms that previously were inadequate under the common law to give those persons a right to sue. That's the language from Spokio. So really what we're looking at here is not that it's a different kind of harm. What Dresden says you look at is the harm similar, is it the same kind of harm, not whether it's the same degree of harm. So the same kind, a corporation, a business like my client receiving an online junk fax, suffers the same kind of injury. Maybe you could argue it's not the same degree of injury as having a standalone fax machine, print out a piece of paper and use your ink and your paper and all that. But it's the same kind of injury. It's the same kind of harm. What harm is that? It's an intrusion, a burden on their business, it's a nuisance, it's an annoyance. I mean, I know a corporation doesn't have feelings, right? A corporation doesn't feel annoyed. But it is a burden on the operations of a company to deal with these faxes. It might be even more problematic dealing with online faxes because you have to look at the email, you have to open it up with a standalone fax machine. If you've programmed it to print automatically, you see automatically what the thing is, what came through. Is it junk or is it something I actually want? It takes a little extra effort when you're getting an email telling you, hey, you have a fax, go look at your online portal to see what it is. And businesses like my client who's a medical provider, they have to look at those things. They can't miss something from a pharmacy or another referring provider or something like that. They can't just assume it's junk. They need to look at each one. If we were to embrace your position, are we creating a circuit split because we have the Seventh Circuit case back in 2004, American States Insurance Company v. Central Associates of Jackson County, where the panel specifically rejected a TCPA claim brought based on the receipt of a junk fax by a business because the court found that the plaintiff, as a corporation, lacked interest in seclusion? I'm not familiar. Which case is that, Your Honor? It's a 2004 case. American States Insurance Company v. Capital Associates of Jackson County. 992F3RD-939-3. I'm not familiar with it, Your Honor. If you would like to submit a briefing on that case, feel free. I would, and I want to write down. Could you give me the FSOP site one more time? 992F3RD-939, Seventh Circuit, 2004. So we're traveling here today upon intrusion, upon seclusion. Your complaint lists nuisance. What should we make of the fact that the district court, I don't think, addressed the nuisance claim specifically? Right. Well, we're asking the court to reverse, obviously, the district court's... Is that something where, okay, so we're running into the battle over whether a corporation, a common law, has a privacy right of this type since the court didn't deal with nuisance? Is that something that we should send back to the district court to deal with in the first instance? No. Your Honor, you should find that it's close enough here. It's a similar kind of injury in that Congress has the power to make these kinds of policy determinations about who can sue for what kind of violation. What the defendants are asking you to do, and what they convinced the district court to do, is look for an exact duplicate to say, well, this plaintiff, this kind of plaintiff, couldn't sue a common law, and therefore, they can't sue under the statute, or at least there's no Article III standing under the statute. They would have to go to state court to do it. And it's just too demanding of a test. Article III is not meant to be this high bar, an extra hurdle that you have to go to in order to assert your rights that Congress has codified for people to protect consumers like my client. So, no, I mean, if that's what it takes, that's what it takes. But I don't think that's necessary, and I don't think we need a tight one-to-one, perfect, exact carbon copy duplicate of a common law cause of action. We have to say, Congress didn't entirely invent something new here. They just extended, they gave a right of action to this particular kind of plaintiff expressly. I mean, Congress was expressly concerned with businesses when it passed the DTPA. Those were the people who, or the persons who were complaining the loudest back in 1991 about junk faxes and telemarketing, and the public law that we've cited from Congress. So clearly standing, even in the district court's order, took a significant amount of space in your case. But I also read the district court's order to find that even putting aside the entity or the person, that there were also class, there were also issues under Rule 23. Especially when it came to permission, whether or not there was permission given to receive these faxes. And that given the size of the class, that would be so, that would be a difficult issue. That there might be some individual versus class concerns. Can you speak to those conclusions from the district court? Sure, but I want to be clear, the magistrate judge reached that conclusion in his report and recommendation. But the district court's order is solely on this Article III standing issue. And from that, he says there's problems with typicality or there's problems with predominance. But it all stems from the Article III standing issue with regard to businesses that use online fax services. Not individuals that use online fax services, but businesses. So this court shouldn't reach that issue. And actually, I don't think it can, because it's not within the ambit of the order that's actually on appeal under Rule 23F. But we did address that in our objections to the R&R. And one of the ways we tried to deal with that was to have that Class B definition, which excises everyone for whom the defendant provided evidence of permission. Even though we don't concede it actually is that. But we said, look, those are the people you actually have something for, so we'll cut them out of the class. It's not that hard. Thank you. Thank you. Thank you, Your Honors, and may it please the Court. My name is Darren Jones with the law firm of Brennan, Manning, and Diamond. And I, along with my partner Joshua LaBoeuf, appear today on behalf of the appellees in this action, Precision Imaging and Halo Diagnostics. Your Honor, we are here today to ask this Court to affirm the district court's order holding that the proposed period of class members who received the faxes via an online fax service lack standing under Article III of the United States Constitution. And at the risk of oversimplifying the issues in this appeal, this appeal comes down to, and it was below the same as it is here today, two facts and one legal stipulation. There were two undisputed facts below that control the Article III analysis this Court is required to conduct. And there was a legal stipulation, an argument raised by the plaintiff below and the appellant here today, that dictates what rule we have to apply. The facts that are critical to this Court's determination of the issue are, first, that it is undisputed that all of the members of the proposed period of classes were businesses. 100% of the people that received these faxes were business entities. It is also undisputed that both proposed classes contain an undifferentiated number of individuals that received these faxes via an online fax service, which, for shorthand and brevity's sake, we refer to as the OFS recipients. Now, as to the legal stipulation, counsel below in their briefing and here in their briefs indicated that the harm they alleged that these individuals that received, and I say individuals, I apologize, businesses that received these faxes via an OFS suffered an intangible harm. And the reason that that is critical is that the Supreme Court tells us in TransUnion if the harm alleged is an intangible harm, we must apply the comparative tort analysis. So, as to the first point of error, and that concerns the District Court's characterization of the claim raised on behalf of the OFS recipients as, quote, at best a bare procedural violation of the TCPA, that is not well taken. Because as this Court noted in addressing this very same issue for the second time in its decision in Moransky, that that argument misses the point, because regardless of what label you hang on a statutory violation, the question always is whether an injury, in fact, accompanies a statutory violation. And this is because the test under Spokio asks whether the statutory violation is accompanied by a legally redressable harm. Meaning, at its most basic level, the Spokio test says, is it a violation? If so, was there some sort of harm that was legally redressable at the common law that suffices to meet the Article III standing test? Here, as is often the case in these TCPA cases and all of these statutory cases, the question comes down to the harm element. And that is here, of course, an intangible harm, which under the courts, compared to tort analysis, it must apply under TransUnion, leads us to the second point of error, which is the District Court's conclusion that the OFS recipients lacked Article III standing because they are businesses. And businesses have never been understood at the common law to enjoy a right to privacy that they could seek redress at the courts. So how do we not need to reconcile the statute itself, which I think in subsection B3 talks to persons and entities and then defines persons to include joint stock companies, corporations, trusts, et cetera? Your Honor, I think that the reconciliation there has already been done by the Supreme Court and its decisions in FCC versus AT&T, where it was addressing that same issue, where businesses were defined as a person, but the court was addressing personal privacy rights and whether those should extend to those businesses. And the court there resoundingly said the answer was no. And so when this court is addressing the relevant common law comparator that we're looking at today, which is the intrusion upon seclusion, the decision in Dresden makes clear that... The relevant common law comparator we're looking at today. I will get to the nuisance comparator, but the one that was briefed and the one that was raised, I don't believe the nuisance one is well taken, and I'll explain that in a moment, Your Honor. But the relevant common law comparator that this court, let's just be clear, this court has addressed this Article III standing issue in a trilogy of cases of en banc decisions that have come down through Moransky, Hunstein, and then in Dresden. And in the ones where it's looking at electronic communications, the tort that's always resorted to is the tort of intrusion upon seclusion. And the reason we do that is because the Supreme Court told us so in Spokio. They said that that's one of the types of harms for these sort of invasion of privacy torts that we can look at to find the basis for a common law comparator. And under that tort, the elements are intentional intrusion into another solitude or seclusion, which would be highly offensive to a reasonable person. And I think it's fair to say that in light of the Dresden decision and the reason it receded from Solcito, that the critical element of that test is the right to privacy. And without a right to privacy, you cannot have standing to bring a claim for intrusion upon seclusion. And we know you don't have a right to privacy as a business because the AT&T case tells us so. And in that case, the United States Supreme Court held as a matter of, frankly, historical context that businesses have historically never been understood to enjoy the actual right to privacy beyond their publicity, which is the test here. The relevant inquiry is what do we look to as a common law? What was redressable at the common law? AT&T, you would concede, was not a TCPA case. It was a FOIA case. And they were looking at the personal privacy exemption as applied to a corporate defendant. I would agree with that, Your Honor. But I think that the reason AT&T is instructive is that the court was simply acknowledging a historical truth. And that historical truth is that at the common law, businesses have never been understood to enjoy. No, generally understood. I think that's an important word from AT&T as well, because there's some debate as well as is that really a holding or is it just dicta? Certainly. And I don't believe that it's dicta to the extent that the question the court is presented with today is the question of whether at the common law, businesses have enjoyed a right to privacy. And inciting to the restatement second, I think this is important. From the restatement second towards section 652i, which is quoted by Chief Justice Roberts in his opinion for the court. In that, he says, a corporation, partnership, or unincorporated association has no personal right to privacy. Now, he stopped there because they were dealing with personal privacy and the definition of personal privacy. But the restatement goes on in the next sentence to say that it has, therefore, discussing, of course, the businesses, it has, therefore, no cause of action for any of the four forms of invasion of privacy covered by section 652b to 652e. Your honors will remember from Drazen that 652b covers the tort of intrusion upon seclusion. So the Supreme Court there is basically saying that businesses do not have a right to privacy for which they could go to the courts and seek redress for the invasion of that privacy right. Because as the Seventh Circuit noted in the court case that you, Your Honor, pointed out, where do businesses go when they want to hide? Right? That is the point. Because they cannot keep people from communicating with them. I guess they can pull the plug on their phone, but there's no legal redress that they can seek in the courts because of that. And because businesses lack a legally protectable right to privacy, that is the end of the inquiry. It was below. On that point, Your Honor, I think the Drazen decision in note three recognizes that that kind of subspecies of harms has only been recognized to be these informational torts, is what I refer to them as. That's Congress has elevated the right that you have the right to ask for certain documents. And then you're denied access to those documents, and then you have a right to sue for those. I think that if you do take that to its logical conclusion, run it through the transunion test, what we're really doing is we're talking about the tort of repletment. And that Congress is simply elevating your possessory right to that document, and the common law tort already exists. So I think it still passes muster under the transunion test and not looking at it as a separate subspecies. But I have never seen a case that's been decided by the Supreme Court or any of the circuit courts that have addressed this kind of catch-all phrase without in the same breath mentioning that Congress's powers to elevate rights are limited. But this Court's dictate to go through and do the Article III analysis and decide is the harm legally cognizable at law. And so I would submit that because just as the Supreme Court held in transunion and that this Court held in its decisions in Maransky and Hunstein, where an element critical to the relevant common law comparator is entirely missing, which it is here because businesses have no right to privacy, that that is the end of the inquiry. They have not suffered a concrete injury in order to establish standing, and the Court need look no further. Now, real briefly, concerning the issue of the nuisance tort, again, the test we have to apply as transunion, we're talking about an intangible harm. If you're applying that and actually looking at the tort of nuisance, not the colloquial nuisance that we suffer when we get stuck in traffic, but an actionable right at law for nuisance, that has only been understood in the context of private nuisance to apply to real property. So just as it does in this case when we're looking at the privacy rights, it fails because they don't have a right to privacy, it fails right out the gate because we're missing a condition preceded to that cause of action. There is no real property at issue in this case. So I think that that comparison falls apart when you actually get into the transunion analysis the Court has to apply. And so as a final point, I do want to note that in Appellant's reply, they cite to the 10 circuits decision in the 2006 case of Park University Enterprises versus American Casualty Company for the proposition that the TCPA protects a species of privacy interest in the sense of seclusion specifically for businesses. And then the Park University case incites to a series of other circuit court cases from the 4th, 5th, and 8th circuits that they claim stands for the similar proposition. Now, I would submit that they failed to note that those cases all dealt with insurance contracts, not Article III standing. So on that alone, I believe they're distinguishable. Going furthermore, though, it's the fact that those cases were all decided a decade before Spokio. We now have the close relationship test. Obviously, as we are instructed through transunion, how to apply it, right? Spokio told us what to look at. Transunion told us how to look at it. And I would submit that because those cases, even if they stand for the proposition that businesses have a right to privacy and the TCPA was set up in some manner to protect that right, that they are no longer good law in light of the fact the court has to apply in the context of an intangible harm the transunion test. What do you make of the fact that the 7th Circuit case that I had mentioned was 2004, so well before Spokio, even though it does address the TCPA square on? How much should we credit that 7th Circuit opinion when so much has occurred at the Supreme Court and at this court regarding standing analysis? I think that the 7th Circuit's decision reaches the correct conclusion. It just wasn't directed exactly to answer that question. All right, just the same as this court was applying the comparative tort analysis and specifically the critical element test, if we want to call it that, this court was applying that before transunion told us that's the test we had to apply, right? And I believe that the result in this case is borne out simply by the fact that we're dealing with businesses. There's no way to tell which businesses received a standalone fax versus an online fax. And because businesses lack a protectable interest of privacy, they do not have standing. And if Your Honors do not have any other further questions, I would yield the remainder of my time to the Court. Thank you. Mr. Herrera, you have five minutes for a vote. Thank you. Well, we've got to the root of the question there. As my friend said, you have to be able to recover at the common law or sue at the common law. That's really what the argument is. If you don't have a cause of action at common law, then you don't have a cause of action under the statute. That's exactly the opposite of what Drayson says and what Spokio says. It says you can elevate harms that previously were inadequate at law. Congress can do that through a statute. And that's what it's done here. If you have to be able to sue at common law in order to exercise your rights under the statute, then Congress might give you extra rights. But still, that's the carbon copy, exact duplicate sort of thinking that this Court has refused to engage in. It's really overthinking the question, I think is what Judge Newsom said, and I think it was his concurrence in Baranski. But it's really making it more complicated than it is. Just to be clear, so it sounds like the opposing counsel is suggesting we have to do at least two steps. First, yes, you have a statutory right based on how a person is defined. But then you have to look. The next step is whether or not that harm was available to you at common law. And so what is the test? Just to be clear, you're proposing. I think that's exactly what he would have to be available to you under common law. What Drazen says and what Ramirez says, TransUnion says, is that the harm that Congress has identified in the statute has to be similar in kind to the harm that was under the common law. Not that you could have sued under the common law, but that it's a similar kind of injury. So similar in time, but not similar in availability. Assuming, again, that common law businesses didn't have the right, but now at the statutory level you're saying they do. I think that's exactly right. And I think what the defendants are really saying here is not that it's the wrong kind of harm, but that it's the wrong kind of plaintiff, right? Some plaintiffs might be able to sue for this, but not you, Mr. Business. And that's not their job, and that's not really the court's job. That's Congress's job to decide who can sue for this cause of action. And Congress made that determination in the TCPA, Section 227b3, which has the private right of action for violations of the facts provisions. Is that a plain reading or to, again, not to speak for opposing counsel, or does it require us to look outside of the statute to gobble together what you just proposed? I think you start with the statute. You see that there's a cause of action for this plaintiff that Congress created for entities, persons, which is defined under the statute to include corporations. So that number one already starts plain meaning.  You're saying plain reading of the statute tells us that, what you just said. Correct. Okay. And I agree that under Drazen, you also need to take that second step and see if there is a similar. You look at history. I mean, Spokio talks about history and tradition. Is it similar to a harm that was actionable in common law? You're saying that there is some harm out there. I guess you're saying we're not supposed to look at the reasoning behind the harm because we're looking at intrusion upon seclusion. As your opposing counsel said, a common law, that wouldn't have been available to an entity, and there is a reason for that in terms of a right to privacy. You're saying we don't consider that reason just because the harm in common law existed at all. We look to that, and then Congress has said that entities can sue under the TCPA. That's your analysis. Yeah, I mean, the TCPA was enacted because, you know, changes in technology. Like, things change, you know, and Congress has to be able to adapt and pass new laws that can protect its constituents, the businesses and individuals and everybody who lives in this country. So, yes, you look at the common law to see if there is a similar harm, but you ultimately, Spokio says, the judgment of Congress is also important, and you have to look at that. Congress created this cause of action. The class members in my class who used online fax services have a right to recover under that statute, and the federal courts should give them an avenue to do so. We're asking this court... It is correct, as he represented, that all members of the class are businesses. Does that... You know, I don't know if that's true, and I can't say that. If there's a stipulation to that effect, I'm not saying it's not true. I just can't represent to the court whether it is true right now. You agree that there are some physical fax machines in the class and some online fax? Yes. And I would not make that concession if the faxes in this case were sent, like, in 2009, like in some of my cases. The faxes in this case were sent in 2022, so there are some. Not my plaintiff, but there are some. Your plaintiff was an online fax? Stand-alone fax machine, yes. Thank you. Thank you both. We have your cases for review and we are in recess until tomorrow morning. All rise.